## Drew *v.* Chambliss.

Where a sheriff, by whom a plantation had been seized under writs in his hands, is, by consent of all concerned, made the factor of the estate, and in that capacity ships the crop, receives the proceeds, makes disbursements, and has the general supervision and control of the property, the allowance of an item in his account of two and a half per cent commissions on the amount of cash which came into his hands for receiving and disbursing, is not in conflict with art. 71 of the constitution.

APPEAL from the District Court of Carroll, *Copley*, J. *Short*, *Parham* and *Drew*, for the plaintiff, cited C. C. 2948 *et seq.* C. P. 283, 657. 14 La. 63. 10 Rob. 147.

*Stacy* and *Sparrow*, for the appellant. The appellant relies on art. 71 of the constitution of 1846, in asking the reversal of this judgment. "No court or judge, shall make any allowance by way of fee or compensation in any suit or proceedings, except for the payment of such fees to the ministerial officers as may be established by law." The judge has not ordered the payment of the costs of suit and of fees allowed by law, but he has fixed the sum of $447 as a compensation for the sheriff's services in disbursing the revenue, &c. Are these "fees established by law?" We are not able to find any thing of the kind in the fee bill.

The position taken by the plaintiff's counsel, is, that the allowance made in this cause comes within the exception in this article of the constitution. This cannot be. The judge has been asked to fix, and he has fixed, by a judgment, the amount we should pay the sheriff for disbursing the revenues &c. of the property in his hands. Why call on the judge to fix the amount, if it was already fixed by law? Can a fee be said to be established or fixed by law, when it is in the discretion of the judge *to say how much it shall be?* He also invokes article 2949 of the Civil Code, which provides " that the obligation of the party that has seized the property consists in paying the guardian his legal fees ;" and article 283 of the Code of Practice which says, " that the sheriff may confide the property sequestered to the care of guardians or overseers, for whose acts he remains responsible; and that he will be entitled to receive a just compensation for his administration to be determined by the court, to be paid to him out of the proceeds of the property sequestered, if judgment be given in favor of the sheriff." These provisions of law, and the decisions on them, were enacted or given before the adoption of the constitution of 1846. That the article we have referred to in that constitution was introduced and accepted by the Convention expressly for the purpose of taking away this dangerous discretion of permitting judges to make allowances to officers of court, or of ordering the payment to them of any fees other than those established by law, there can be no doubt. It was intended " to deprive (to use the language of a delegate now on this bench,) the judges of every species of patronage." Debates on Constitution, p. 768. It is argued that the fee in this case "is established by law, yet the precise amount is not fixed." What is the meaning of the word—established? Webster defines it: " To set or fix firmly or unaltera-

DREW<br>v.<br>CHAMBLISS.

bly." Can a fee be said to be "fixed firmly or unalterably," when its amount is left to the discretion of the judge?

But is this fee or allowance established by law? The last general act in relation to the fees of officers, was approved 10th of March. 1845. It provided that sheriffs should be "entitled to demand and receive the following fees of office, *and no more.*" Acts of 1845, p. 53. The only item in that fee bill which can be regarded as supporting in the most remote degree the plaintiff's demand, is in these words; " For keeping personal property and slaves on attachment, under seizure, or otherwise legally in the hands of the sheriff, at the discretion of the court, provided that the charge for keeping each slave shall not exceed twenty-five cents per day, when in actual custody." There is nothing squinting at an allowance for disbursing money &c. It was intended that the sheriff should be allowed a fair price for keeping slaves or other property, whether he maintain them himself or employ others to do it. In this case he kept the slaves himself, but, as will be seen by referring to his account. he has charged the amount of the physician's bill for attending to them in their sickness, for the provisions they consumed, and for the services of the overseer or guardian. In a word, we are called upon to pay, and we do not resist the payment of, every dollar of expense he incurred in supporting, keeping, and administering this property. But this is not all: we are condemned to pay the sheriff "for the care in keeping and responsibility of $202,500 worth of property," and "for receiving, disbursing and responsibility of $17,901 54". These are the foundations of the charges for which judgment has been given. What was "the care in keeping and responsibility"? All the sheriff had to do was to employ a proper person to manage the property, ship the crops, and order the supplies from New Orleans. This done, no responsibility could attach to him. All the law could require of him would be the care that a prudent man would take of his own property. His duty would be discharged when he placed a proper person in charge of the plantation. It cannot be expected that the sheriff could personally superintend the management of every plantation that comes into his hands by seizure, sequestration, or attachment. He must act through agents, and the parties are responsible for any reasonable price he may have to pay them.

If the sheriff is to be paid for the responsibility he incurs in administering property, may he not also claim compensation for all other responsibilities he may have to assume in the discharge of his various duties, and call on witnesses to fix their value. The result assuredly would be that, the allowances made by the courts to the sheriffs would far exceed all the fees given to them and fixed by the fee-bill.

The judgment of the court was pronounced by

EUSTIS, C. J. The plaintiff, as sheriff of the parish of Carroll, had for several months a plantation and slaves in his custody under two writs, one of sequestration and the other of seizure and sale; and we infer from what is before us, that he was, by consent of all concerned, made its factor. He shipped the crop, received the proceeds, made disbursments, and had the general supervision and control of the property.

The district judge gave judgment in his favor, for a commission of two and a half per cent. We do not consider this to be an allowance by the judge in conflict with the 71st article of the constitution, but an action to recover this commission for receiving and disbursing the revenues of the plantation under an implied contract to pay for them, in which, under the admissions made, the plaintiffs must recover. . *Judgment affirmed.*